UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

------------------------------------------------------

KATRINA RIVERS LABOULIERE, individually
and on behalf of the Estate of Katherine Smith,

        Plaintiff,

   v.

OUR LADY OF THE LAKE FOUNDATION;
DR. TODD A. PEAVY; WOMEN &
CHILDREN'S HOSPITAL OF DELAWARE,
LLC; and OUR LADY OF THE LAKE
HOSPITAL, INC.,

        Defendants.

------------------------------------------------------

**COMPLAINT**

**JURY TRIAL DEMANDED**

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

THE BIZER LAW FIRM
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## PRELIMINARY STATEMENT

1.      Katherine Smith was a deaf individual who communicated primarily in American Sign Language ("ASL"), which was her expressed, preferred, and most effective means of communication. Ms. Smith was a patient receiving treatment from Dr. Todd A. Peavy, the Women & Children's Hospital, and Our Lady of the Lake Emergency Room. Throughout her care with the above-named healthcare providers, Defendants failed to provide Ms. Smith with the necessary interpretation services, and thereby failed to ensure effective communication with her in a medical setting, by ignoring or denying her requests for accommodation on an ongoing basis during her medical treatment.

2.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said. Despite this, Defendant often forced Ms. Smith to communicate using this unreliable and ineffective method, instead of properly accommodating her disability.

3.      Reliance by deaf individuals upon family members to interpret medical communications for them has been found to be unwise and dangerous, insofar as family members are generally too personally and emotionally involved with the deaf patient to act impartially with the emotional detachment that is necessary of qualified sign language interpreters, particularly in medical settings. Despite this, Defendant often forced Katrina Smith, Ms. Smith's daughter, to interpret instead of properly accommodating Ms. Smith's disability.

4.      Plaintiff brings this lawsuit seeking compensatory damages and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116; and the Louisiana Commission on Human Rights ("LCHR"), LA. REV. STAT. ANN. § 51:2231 et. seq.

## THE DEFENDANTS

5.      Plaintiff KATRINA RIVERS LABOULIERE (hereinafter "Plaintiff" or "Ms. Labouliere") brings this action and is an individual residing in Gonzales, Louisiana.  Ms. Labouliere brings this action both individually and in her capacity as the daughter and representative of the Estate of her late mother, Katherine Smith, who was a profoundly deaf individual. Ms. Smith communicated primarily in American Sign Language, was substantially limited in the major life activities of hearing and speaking, and was a qualified person with a disability within the meaning of the Patient Protection and Affordable Care Act, the Rehabilitation Act, and the Louisiana Commission on Human Rights. Ms. Labouliere is hearing and is a professional sign language interpreter.

6.      Defendant DR. TODD A. PEAVY is a natural person who, upon information and belief, operates a place of public accommodation located in the Lake Area Medical Center, in Lake Charles, Louisiana. Upon information and belief, DR. TODD A. PEAVY operates a medical practice which is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making him subject to the requirements of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights.

7.      Defendant WOMEN & CHILDREN'S HOSPITAL OF DELAWARE, LLC, is a limited liability company doing business in Louisiana with a domicile of 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Defendant owns, leases, and/or operates Lake Area Medical Center, a medical facility located at 1920 W. Sale Road F-1, Lake Charles, Louisiana 70605. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights.

8.      Defendant OUR LADY OF THE LAKE HOSPITAL, INC., is a non-profit company doing business in Louisiana with a domicile of 5000 Hennessy Boulevard, Baton Rouge, Louisiana 70808. Defendant owns, leases, and/or operates Our Lady of the Lake Hospital and Emergency Room, a hospital located at 5000 Hennessy Boulevard, Baton Rouge, Louisiana 70808. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights.

9.      Defendant OUR LADY OF THE LAKE FOUNDATION, is a non-profit company doing business in Louisiana with a domicile of 5000 Hennessy Boulevard, Baton Rouge, Louisiana 70808. Defendant owns, leases, and/or operates Our Lady of the Lake Hospital and Emergency Room, a hospital located at 5000 Hennessy Boulevard, Baton Rouge, Louisiana 70808. Defendant is a place of public accommodation under federal and state antidiscrimination

laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights.

## JURISDICTION & VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant resides within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

12. Upon information and belief, the mailing address of Dr. Todd A. Peavy is: 501 Dr. Michael Debakey Dr, Lake Charles, LA 70601.

13. Upon information and belief, the mailing address of Women & Children's Hospital of Delaware, LLC is: 4000 Meridian Blvd., Franklin, TN 37067.

14. Katherine Smith was a profoundly deaf individual who communicated primarily through American Sign Language.

15. Katherine Smith had limited proficiency in written English, and required auxiliary aids and services to communicate effectively in a medical setting.

16. Katrina River Labouliere is Katherine Smith's daughter.

17. Katrina River Labouliere is hearing.

18.     Katrina River Labouliere makes this claim individually, and also on behalf of the estate of Katherine Smith.

**As to: Dr. Todd A. Peavy; and Women & Children's Hospital of Delaware, LLC:**

19.     Upon information and belief, Dr. Todd A. Peavy is an employee and/or agent of Women & Children's Hospital of Delaware, LLC and, therefore, Women & Children's Hospital of Delaware, LLC is vicariously liable for any and all malpractice and/or negligence committed by Dr. Todd A. Peavy.

20.     On or about Thursday, November 26, 2015, Katherine Smith visited Dr. Todd A. Peavy as a patient ("the November Visit"). Ms. Smith asked for a sign language interpreter, but never received one.

21.     Dr. Todd A. Peavy was aware that Ms. Smith was deaf and required a sign language interpreter to effectively communicate in a medical setting.

22.     During the November Visit, Dr. Todd A. Peavy attempted to communicate with Ms. Smith via gestures, lip reading, and hand writing, none of which are effective means of communication in a medical setting.

23.     During the November Visit, Dr. Todd A Peavy noticed a spot on Ms. Smith's lung.

24.     Upon information and belief, Dr. Todd A Peavy ordered that tests be performed, but Ms. Smith never learned the results of these tests.

25.     Upon information and belief, Dr. Todd A. Peavy diagnosed Ms. Smith with anemia as a result of a low blood count and prescribed Ms. Smith with a heavy dose of iron pills.

26.     Upon information and belief, Ms. Smith also attempted to communicate to Dr. Todd A Peavy that she was experiencing pain in her back and side.

27.     Upon information and belief, instead of attempting to discover the cause of the pain in Ms. Smith's in back/side, Dr. Todd A. Peavy merely prescribed Ms. Smith pain medication.

28.     Upon information and belief, Dr. Todd A Peavy eventually recommended that Ms. Smith see a specialist for testing. Upon information and belief, this specialist diagnosed Ms. Smith with an enlarged spleen.

29.     In approximately the third week of February, Ms. Smith went to West Calcasieu Cameron Hospital ("Cameron Hospital"). While at Cameron Hospital, Ms. Smith was diagnosed with liver failure and cancer of the liver.

30.     Upon information and belief, the doctors at Cameron Hospital determined that the cancer in Ms. Smith's liver had already progressed to such an extensive stage that it had spread to other organ(s), though the precise extent of the spread of the cancer was unknown.

31.     On or about Thursday, February 4, 2016, Ms. Smith's oncologist informed Ms. Smith that she was not a candidate for chemotherapy, that she had stage four liver cancer, and that she had only approximately one-to-two weeks to live.

32.     On Sunday, February 15, 2016, Ms. Smith passed away.

33.     Without the aid of an ASL interpreter, Ms. Smith was unable to understand the nature, scope, and seriousness of her illness and condition. She was not adequately advised of her diagnoses, prognoses, medications, or treatments. She was unable to ask questions of Dr. Todd A Peavy for clarification.

34.     Dr. Todd A Peavy did not, at any point, provide Ms. Smith with adequate auxiliary aids and services to enable her to effectively communicate with him.

35.     In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

36.     Dr. Todd A. Peavy's failure to provide Ms. Smith with effective auxiliary aids and services caused Ms. Smith to experience fear, anxiety, indignity, humiliation, and/or emotional distress.

37.     Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC knew or should have known of their obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

38.     Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Ms. Smith greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

39.     Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC and staff failed to assess the communication abilities and needs of Ms. Smith.

40.     As a result of Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC's failure to ensure effective communication with Ms. Smith, Plaintiff and Ms. Smith received services that were objectively substandard and that were inferior to those provided to hearing individuals.

41.     As a result of Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC failure to ensure effective communication with Ms. Smith, she was deprived of her right to understand her diagnosis and treatment, to provide informed consent, and to maintain privacy with regard to her medical information.

42.     Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC wrongful discrimination against Plaintiff on the basis of disability is reflected by their failure to train employees and promulgate policies of non-discrimination against deaf individuals.

43.     Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC discriminated against Ms. Smith and Plaintiff with deliberate indifference to Ms. Smith's communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

44.     The existence of a material risk unknown to Ms. Smith existed in the following forms: the risk of not providing all information needed to make a diagnosis; the risk of undergoing various tests; the risk of taking pain medications; and the risk of taking iron pills.

45.     Due to the complete failure of Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC to provide effective auxiliary aids and services, Defendants failed to disclose risks to Ms. Smith.

46.     As set forth below, Ms. Smith suffered injury in the form of pain, invasion of her civil rights, anxiety, indignity, and death.

47.     As a result of the discrimination set forth above, Ms. Labouliere, a professional sign language interpreter, has been unable to work as a sign language interpreter. Ms. Labouliere cannot work as a sign language interpreter without an emotionally crippling association between the sign language interpretation and her mother's discriminatory treatment.

48.     As a result of the discrimination set forth above, Ms. Labouliere has avoided numerous jobs where she could otherwise work as a sign language interpreter and has lost significant amount of earning potential.

49.     As a result of the discrimination set forth above, Ms. Labouliere has had nightmares and difficulty sleeping. Ms. Labouliere has visited a doctor and psychiatrist for depression.

50.     As a result of the discrimination set forth above, Ms. Labouliere has suffered panic attacks and on at least one occasion Ms. Labouliere has collapsed as a result of a panic attack.

51.     As set forth above, Ms. Labouliere suffered injury in the form of loss of her mother, emotional distress, anxiety, indignity, invasion of her civil rights, panic attacks, nightmares, depression, inability to work as a sign language interpreter, loss of employment opportunities, and inability to enter medical facilities.

52.      Defendants failed to provide Ms. Smith with informed consent, in accordance with the requirements of Louisiana R.S. 40:1299.40.

53.     **A Brief Description of the Alleged Injuries Caused by Dr. Todd A. Peavy and Women & Children's Hospital of Delaware, LLC**: loss of her mother, emotional distress, anxiety, indignity, invasion of her civil rights, panic attacks, nightmares, depression, inability to work as a sign language interpreter, loss of employment opportunities, lack of privacy, and inability to enter medical facilities.

**As to Our Lady of the Lake Hospital, Inc.; and Our Lady of the Lake Foundation (hereinafter "Our Lady of the Lake"):**

54.     Plaintiff incorporates by reference Paragraphs 1 through 39.

55.     Upon information and belief, the mailing address of Our Lady of the Lake Hospital, Inc. is: C/O K. SCOTT WESTER, 4200 ESSEN LANE, BATON ROUGE, LA 70809.

56.     Upon information and belief, the mailing address of Our Lady of the Lake Foundation is: C/O LISA SPLIT-LOG, 4200 ESSEN LANE, BATON ROUGE, LA 70809.

57.     Upon information and belief, the nurses, doctors, staff, and other employees are employed, supervised, and/or trained by Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation.

58.     Upon information and belief, Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation are the owners, operators, and/or lessees of the Our Lady of the Lake Hospital where Ms. Smith was admitted on February 27, 2016.

59.     On Saturday, February 27, 2016, in the morning Ms. Smith was "yellow like a lemon." Therefore, Ms. Smith and her daughter Ms. Labouliere went to the Emergency Room at Our Lady of the Lake Hospital, in Baton Rouge.

60.     Ms. Smith and Ms. Labouliere demanded an interpreter, but over the course of nine (9) hours no interpreter was provided. Ms. Smith was admitted overnight.

61.     The next morning, Sunday, February 28, 2016, the nurses tried to communicate with a white board. Ms. Smith and Ms. Labouliere demanded an interpreter, but none was provided.

62.     Ms. Labouliere explained to the Nurse Supervisor that a white board was not an effective means of communication for Ms. Smith, but no sign language interpreter was provided.

63.     Later in the day, an interpreter finally arrived at Our Lady of the Lake Hospital. However, the interpreter was not synced up with the oncologist's rounds. The interpreter stayed for two hours and left. The interpreter did not facilitate effective communication because the oncologists and nurses did not communicate with Ms. Smith during the two hours when the interpreter was available.

64.     Later on Saturday, a Video Remote Interpreting ("VRI") device was produced by Our Lady of the Lake, but the staff and nurses didn't know how to use it. Additionally, there was not enough bandwidth for proper usage. The proper ports were not designated. Furthermore, the VRI was not useful for complicated doctor's instructions.

65.     Ms. Labouliere informed the nurses that when her mother pushes the call button, they cannot respond via the intercom because she is deaf. However, the nurses and staff never heeded this require and instead tried to communicate over the intercom.

66.     Ms. Labouliere demanded use of the VRI machine during all nurse visits, but the nurses did not what a VRI machine was or how they worked. Accordingly, while the VRI machine could have facilitated effective communicate between Ms. Smith and the nurses, no such communication occurred due to the failure to train the nurses and staff at Our Lady of the Lake.

67.     Ms. Labouliere had a pre-scheduled appointment for a biopsy. Ms. Smith and Ms. Labouliere demanded in advance that an interpreter be present for the biopsy since Ms. Smith would be awake for the procedure. Ms. Labouliere went to lunch and the staff tried to wheel Ms. Smith to the biopsy without an interpreter. After much protestation, the staff learned that there was an interpreter in the hospital on another case and that the interpreter would meet them at radiology to interpret the biopsy. Ms. Smith and Ms. Labouliere waited for 2 hours at radiology, but interpreter never came.  Due to her mother's extreme pain and suffering, Ms. Labouliere was forced to interpret during the biopsy. Ms. Labouliere had to watch and assist in the procedure that included entering multiple needles into Ms. Smith's stomach to pull out fluids, all while her mother was not on pain medication.

68.     On Monday and Tuesday, Ms. Smith continued to have only intermittent access to communication. At some point, the VRI machine malfunctioned and no backup VRI machine was available. Throughout this time, no interpreter was provided for important communication between Ms. Smith and the doctors, staff, and nurses.

69.     On Wednesday, March 2, 2016, Ms. Smith underwent a CT scan. Ms. Smith and Ms. Labouliere demanded an interpreter. No interpreter was provided. Instead, Ms. Labouliere was forced to interpret for Ms. Smith and hold up her months hands for the scan.

70.     On Thursday, March 3, 2016, the oncologist tried to give Ms. Smith the results of her tests via VRI. The VRI machine was not operating properly and Ms. Smith was hallucinating and had diminished mental capacity. Ms. Smith demanded an interpreter, but none was provided during the 45 minute consult.

71.     During the 45 minute consult, Ms. Labouliere was forced to relay the following emotional information:

- That Ms. Smith was not a candidate for chemotherapy;

- That Ms. Smith had advanced stage four (4) live center, but that the doctors did not know where the cancer came from;

- That Ms. Smith could undergo more tests if she desired to determine the source of the cancer; and

- That Ms. Smith only had one (1) to two (2) weeks to live.

72.     In response to this, Ms. Smith responded "what do you mean? I never had an interpreter to tell me this." As evidenced by this statement, the first time anyone from Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation communicated her health status to Ms. Smith was almost a full week after her admission.

73.     On Friday, March 4, 2016, Ms. Smith was discharged from Our Lady of the Lake. No interpreter or other means of communication was provided at the time of discharge. Ms. Smith left Our Lady of the Lake Hospital without having been provided with treatment options for the next two weeks. Ms. Smith was not informed of the consequences of continued treatment in the hospital versus treatment at hospice or at home care.

74.     Without the aid of an independent ASL interpreter, Ms. Smith was unable to understand the nature, scope, and seriousness of her illness. She was not adequately advised of her diagnoses, prognoses, medications, or treatments. She was unable to ask questions for clarification.

75.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation did not, at any point, provide Ms. Smith with adequate auxiliary aids and services to enable her to effectively communicate with him.

76.     In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

77.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation failure to provide Ms. Smith with effective auxiliary aids and services caused Ms. Smith to experience fear, anxiety, indignity, humiliation, and/or emotional distress.

78.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation knew or should have known of their obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

79.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation and their staff, employees, agents, and contractors knew or should have known that their actions and/or inactions created an unreasonable risk of causing Ms. Smith greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

80.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation and staff failed to assess the communication abilities and needs of Ms. Smith.

81.     As a result of Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation failure to ensure effective communication with Ms. Smith, Plaintiff and Ms. Smith received services that were objectively substandard and that were inferior to those provided to hearing individuals.

82.     As a result of Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation failure to ensure effective communication with Ms. Smith, she was deprived of her right to understand her diagnosis and treatment, to provide informed consent, and to maintain privacy with regard to her medical information.

83.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation wrongful discrimination against Plaintiff on the basis of disability is reflected by their failure to train employees and promulgate policies of non-discrimination against deaf individuals.

84.     Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation discriminated against Ms. Smith and Plaintiff with deliberate indifference to Ms. Smith's communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

85.     The existence of a material risk unknown to Ms. Smith existed in the following forms: the risk of not providing all information needed to make a diagnosis; the risk of

-15-

undergoing various tests; the risk of taking medications; the risk of undergoing a biopsy; the risk of undergoing an MRI; the risk of continued treatment where treatment would be ineffective; and the risk of discharge from the hospital.

86.    Due to the complete failure of Our Lady of the Lake Hospital, Inc. and/or Our Lady of the Lake Foundation to provide effective auxiliary aids and services, Defendants failed to disclose risks to Ms. Smith.

87.    As set forth below, Ms. Smith suffered injury in the form of pain, invasion of her civil rights, anxiety, and indignity.

88.    As a result of the discrimination set forth above, Ms. Labouliere, a professional sign language interpreter, has been unable to work as a sign language interpreter. Ms. Labouliere cannot work as a sign language interpreter without experiencing an emotionally crippling association between the sign language interpretation and her mother's discriminatory treatment.

89.    As a result of the discrimination set forth above, Ms. Labouliere has avoided numerous jobs where she could otherwise work as a sign language interpreter and has lost significant amount of earning potential.

90.    As a result of the discrimination set forth above, Ms. Labouliere has had nightmares and difficulty sleeping. Ms. Labouliere has visited a doctor and psychiatrist for depression.

91.    As a result of the discrimination set forth above, Ms. Labouliere has suffered panic attacks and on at least one occasion Ms. Labouliere has collapsed as a result of a panic attack.

92.    As set forth above, Ms. Labouliere suffered injury in the form of emotional distress, anxiety, indignity, invasion of her civil rights, panic attacks, nightmares, depression,

inability to work as a sign language interpreter, loss of employment opportunities, and inability to enter medical facilities.

93.     Defendants failed to provide Ms. Smith with informed consent, in accordance with the requirements of Louisiana R.S. 40:1299.40.

94.     **A Brief Description of the Alleged Injuries Caused By Our Lady of the Lake**: emotional distress, anxiety, indignity, invasion of her civil rights, panic attacks, nightmares, depression, inability to work as a sign language interpreter, loss of employment opportunities, lack of privacy, and inability to enter medical facilities.

## CLAIM 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

95.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

96.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

97.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

98.     At all times relevant to this action, Ms. Smith had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

99.     At all times relevant to this action, Defendants have offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

100.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

101.    The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

102.    Defendants discriminated against Plaintiff, solely on the basis of disability, by denying Plaintiff and her mother meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

103.    Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

104.    Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 2: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

105.    Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

106.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to the Defendant's conduct.

107.    At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

108.    At all times relevant to this action, Ms. Smith had substantial limitations to the major life activity of hearing and speaking, and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

109.    At all times relevant to this action, Ms. Smith's primary language for communication was American Sign Language and not English; and Ms. Smith had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

110.    At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

111.    Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

112.    Defendants have discriminated and continue to discriminate against Plaintiff and her late mother solely on the basis of disability, by denying them meaningful access to the services, programs, and benefits that Defendants offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

113.    Defendants discriminated against the individual Plaintiff by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that worked.

114.    On information and belief, the refusal to offer on-site ASL interpreter services is as a result of a policy or practice of Defendants to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective

communication.

115.    Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

116.    Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## CLAIM 3: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS

117.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

118.    At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., has been in full force and effect and has applied to Defendant's conduct.

119.    At all times relevant to this action, Ms. Smith has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2232(3)(a).

120.    At all times relevant to this action, Defendants have been places which are supported directly or indirectly by government funds and thus are places of public accommodation, resort, or amusement pursuant LA. REV. STAT. ANN. § 51:2232(9).

121.    The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

122.    The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 2264.

123.    Defendants discriminated against Ms. Smith and Plaintiff, on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247.

124.    Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to LA. REV. STAT. ANN. § 51:2247.

125.    Plaintiff is further entitled an award of attorneys' fees, costs, and disbursements pursuant to the LCHR, LA. REV. STAT. ANN. § 51:2247.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff and her mother to unlawful discrimination in violation of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights;

B.    Award to Plaintiff:

    i.    Compensatory damages pursuant to Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights;

    ii.    Reasonable costs and attorneys' fees pursuant to the Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the

Rehabilitation Act, and the Louisiana Commission on Human Rights;

iii.     Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv.     Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: November 23, 2016

Respectfully Submitted,

THE BIZER LAW FIRM
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/Garret S. DeReus
     Garret S. DeReus