KATRINA RIVERS LABOULIERE,
INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF KATHERINE SMITH        CIVIL ACTION

VERSUS

        NO. 16-00785-JJB-EWD

OUR LADY OF THE LAKE
FOUNDATION, ET AL.

## RULING

Before the Court are two *Motions to Dismiss and Alternative Motions to Stay* filed by Our Lady of the Lake Hospital, Inc. and Our Lady of the Lake Foundation (collectively "OLOL Defendants") and Dr. Todd A. Peavy and Imperial Health, LLP.[1]  Plaintiffs have filed *Oppositions* to both *Motions*.[2]  The OLOL Defendants have filed a *Reply*.[3]  The Court's jurisdiction is pursuant to 28 U.S.C. § 1331. Oral argument is unnecessary.  For the following reasons, the *Motions* shall be granted in part and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Katrina Rivers Labouliere ("Labouliere"), who is hearing and a professional sign language interpreter, has filed this lawsuit individually and on behalf of the estate of her mother, Katherine Smith ("Smith")(collectively Labouliere and Smith are referred to as "Plaintiffs").[4]  This case arises out of the alleged failure of Defendants, Dr. Todd A. Peavy ("Dr. Peavy"), Imperial Health, L.L.P. ("Imperial Health"), Our Lady of the Lake Hospital

---

[1] Doc. 21; and Doc. 23.  In their memorandum in support of their *Motion*, Dr. Peavy and Imperial Health, LLP, adopted the arguments made by the OLOL Defendants on standing and prematurity.  Doc. 23-1, pp. 5-6.

[2] Doc. 29 and Doc. 32.  In their memorandum in opposition to the *Motion to Dismiss* filed by Dr. Peavy and Imperial Health, LLP, the Plaintiffs adopt their arguments raised in their *Opposition* to the OLOL Defendants' *Motion* regarding prematurity, stay, and viability of Labouliere's LCHR claims.

[3] Doc. 36.

[4] Doc. 1, p. 3, ¶5; Doc. 3, p. 3, ¶5; Doc. 16, p. 3, ¶5.

("OLOL Hospital"), and Our Lady of Lake Foundation ("OLOL Foundation"), to provide Smith, a deaf patient who communicated primarily through American Sign Language ("ASL"), with auxiliary aids and services or other accommodations during her medical visits and while a patient at OLOL Hospital.

On November 26, 2015, Smith allegedly had a medical appointment with her regular family practitioner, Dr. Peavy.[5] According to the *Complaints*, Smith requested, but was not provided with a sign language interpreter for her visit, even though Dr. Peavy knew of Smith's condition and her need for an interpreter in order to communicate effectively.[6] Instead, Dr. Peavy allegedly attempted to communicate with Smith via gestures, lip reading, and hand writing.[7] During her visit, Dr. Peavy discovered a spot on Smith's lung and ordered that additional testing be conducted.[8] Allegedly Smith was not provided with any information about the spot, the diagnosis, or treatment options.[9] Dr. Peavy also diagnosed Smith as being anemic and issued her a prescription for iron pills.[10] When Smith attempted to inform Dr. Peavy about pain she was experiencing in her back and side, he prescribed her pain medications instead of investigating her complaints.[11] Eventually, Dr. Peavy referred Smith to a specialist who diagnosed her with an enlarged spleen.[12] In approximately the third week of February of 2016, Smith went to West

---

[5] Doc. 3, p. 6, ¶20; Doc. 16, p. 6, ¶20.
[6] Doc. 1, p. 6, ¶¶20-21; Doc. 3, p. 6, ¶¶20-23; Doc. 16, p. 6, ¶¶20-21. Plaintiffs claim that Smith had limited proficiency in written English. Doc. 1, p. 5, ¶15; Doc. 16, p. 5, ¶15.
[7] Doc. 1, p. 6, ¶22; Doc. 3, p. 7, ¶24; Doc. 16, p. 7, ¶24.
[8] Doc. 1, p. 6, ¶¶23-24; Doc. 3, p. 7, ¶¶25-26; Doc. 16, p. 7, ¶¶25-26.
[9] Doc. 1, p. 6, ¶24; Doc. 3, p. 7, ¶26; Doc. 16, p. 7, ¶26.
[10] Doc. 1, p. 6, ¶25; Doc. 3, p. 7, ¶27;Doc. 16, p. 7, ¶27.
[11] Doc. 1, pp. 6-7, ¶¶26-27; Doc. 3, p. 7, ¶¶28-29; Doc. 16, p. 7, ¶¶28-29.
[12] Doc. 1, p. 7 ¶28; Doc. 3, p. 7, ¶30; Doc. 16, p. 7, ¶30.

Calcasieu Cameron Hospital where she was diagnosed with liver failure and cancer of the liver.[13]

The claims against OLOL arise out of Smith's admission, treatment, and discharge from OLOL Hospital in late February through early March of 2016.[14] On February 27, 2016, the Plaintiffs allegedly went to OLOL Hospital's emergency room because Smith was "yellow like a lemon."[15] Although they demanded a sign language interpreter, they claim that none was provided.[16] Smith was ultimately admitted to OLOL overnight.[17]

Throughout Smith's stay at OLOL Hospital, Plaintiffs claim that they made repeated requests for an interpreter.[18] For instance, although they requested an interpreter in anticipation of Smith's prescheduled biopsy and when Smith underwent a CT Scan, an interpreter was not provided.[19] Labouliere asserts that she requested that the nurses use the Video Remote Interpreting ("VRI") device during all visits with her mother; however, because the nurses were unable to operate the machine, they could not comply with Labouliere's request.[20] Inevitably, Labouliere claims that she had to serve as her mother's interpreter.[21] On March 3, 2016, Labouliere had to translate for her mother's oncologist and inform her mother that she had stage 4 liver cancer and was not a candidate for chemotherapy.[22] Additionally, Labouliere had to inform Smith that she could undergo more testing if she desired to determine the source of the cancer, and that

---

[13] Doc. 1, p. 7, ¶29; Doc. 3, p. 7, ¶31; Doc. 16, p. 7, ¶31.
[14] Doc. 1, pp. 11-14, ¶¶58-73; Doc. 3, pp. 12-14, ¶¶61-75; Doc. 16, pp. 11-14, ¶¶60-79.
[15] Doc. 1, p. 11, ¶59; Doc. 3, p. 12, ¶61; Doc. 16, p.12, ¶61.
[16] Doc. 1, p. 11, ¶60; Doc. 3, p. 12, ¶62; Doc. 16, p. 12, ¶62.
[17] Doc. 1, p. 11, ¶60; Doc. 3, p. 12, ¶62; Doc. 16, p. 12, ¶62.
[18] Doc. 1, p. 11, ¶¶61-62; Doc. 3, p. 12, ¶¶62-63; Doc. 16, p. 12, ¶¶62-63.
[19] Doc. 1, p. 13, ¶69; Doc. 3, p. 13, ¶71; Doc. 16, p. 13, ¶71.
[20] Doc. 1, p. 12, ¶66; Doc. 3, p. 13, ¶68; Doc. 16, p. 13, ¶68.
[21] Doc. 1, p. 13, ¶67, 69, and 71; Doc. 3, p. 13, ¶¶ 69 and 71; Doc. 16, p. 13, ¶¶69, 71, and 73.
[22] Doc. 1, p. 13, ¶¶70-71; Doc. 3, p. 14, ¶¶72-73; Doc. 16, p. 14, ¶¶72-75.

Smith had only one to two weeks to live.[23]  Plaintiffs claim that the next day, Smith was discharged from OLOL Hospital without the assistance of an interpreter.[24]  On March 13, 2016, Smith passed away.[25]

Plaintiffs filed the instant lawsuit on November 23, 2016 asserting claims against the Defendants arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("RA"), Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18116 ("ACA"), and the Louisiana Commission on Human Rights, La. R.S. § 51:2231, et seq. ("LCHR").[26]

Plaintiffs claim that the Defendants discriminated against Smith in violation of the RA on the basis of her disability by denying her meaningful access to the services, programs, and benefits that the Defendants offered to other individuals, and by refusing to provide Smith with auxiliary aids and services to ensure effective communication. Similarly, Plaintiffs allege that the Defendants violated the ACA by discriminating against and continuing to discriminate against them on the basis of disability, by denying them meaningful access to services, programs, and benefits offered to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication.  Plaintiffs further contend that the Defendants discriminated against Smith by failing to provide sign language interpreters on site or through operable VRI

---

[23] Doc. 1, p. 13, ¶71; Doc. 3, p. 14, ¶73;  Doc. 16, p.14, ¶¶76-77.
[24] Doc. 1, p. 14, ¶73; Doc. 3, p. 14, ¶75; Doc. 16, p. 14, ¶79.
[25] Doc. 3, p. 8, ¶34; Doc.16, p. 8, ¶34.
[26] Doc. 1.  Plaintiffs have filed a *First* and *Second Amended Complaint*.  Doc. 3 and Doc. 16, respectively. In the original *Complaint*, Plaintiffs named Women & Children's Hospital of Delaware, LLC, as a Defendant. Subsequently, Plaintiffs filed a *Notice of Dismissal* as to Women & Children's Hospital of Delaware, LLC. Doc. 13.  In their *Second Amended Complaint*, Plaintiffs added a new Defendant, Imperial Health, LLP, as Dr. Peavy's alleged employer.  Doc. 16.

machines.  Additionally, Plaintiffs contend that Defendants have violated the LCHR by discriminating against them on the basis of Smith's disability.

As a result of the Defendants' alleged discriminatory treatment, Plaintiffs assert that Smith suffered pain, invasion of her civil rights, anxiety, indignity, and death.[27] Labouliere also claims that she has avoided jobs as a sign language interpreter, has difficulty sleeping, experiences nightmares, and suffers from depression, anxiety, and panic attacks.[28]  Labouliere seeks to recover, on behalf of herself and her mother, compensatory damages, attorney's fees, costs, and disbursements as authorized by the respective statutes for Defendants' alleged discriminatory conduct and deliberate indifference.

Before the Court are two *Motions to Dismiss*:  one filed on behalf of the OLOL Defendants, and another filed on behalf of Dr. Peavy and Imperial Health.[29]  In both of the *Motions*, the Defendants assert that Labouliere lacks standing to bring a private right of action under the RA, the ACA, and the LCHR.[30]  They also seek dismissal of all of the Plaintiffs' claims because they sound in malpractice, and have not been considered by a medical review panel.  In the alternative, Defendants request that the Court stay the litigation pending review of the state law claims by a medical review panel.  Defendants, Dr. Peavy and Imperial Health, further object to venue in the United States District Court for the Middle District of Louisiana.  Plaintiffs disagree with the Defendants' arguments.

---

[27] Doc. 1, p. 9, ¶46; Doc. 3, p. 10, ¶48; Doc. 16, p. 10, ¶48.
[28] Doc. 1, pp. 9-10, ¶¶47-51; Doc. 3, pp. 10-11, ¶¶49-53; Doc. 16, pp. 10-11, ¶¶49-53.
[29] Doc. 21 and Doc. 23.
[30] Dr. Peavy and Imperial Health adopt the arguments and citations made by the OLOL Defendants in support of their Motion to Dismiss on the issue of standing and prematurity.  Doc. 23-1, pp. 1, 5-6.

## II.    LEGAL STANDARD

### A.    Venue

On a Rule 12(b)(3) motion to dismiss for improper venue, the court must determine whether venue is supported by the federal venue statute, 28 U.S.C. § 1391.   If venue is not supported by 28 U.S.C. § 1391, then pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[31]   When analyzing a Rule 12(b)(3) motion for improper venue, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."[32]   However, Rule 12(b)(3) allows the court to look at all evidence in the record "beyond simply those facts alleged in the complaint and its proper attachments."[33]

### B.    Rule 12(b)(6)

At the motion to dismiss stage, the Court must accept the well-plead factual allegations in the complaint as true.[34]   The Court views the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor.[35]   However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[36]   The Court will not "strain to find inferences favorable to the plaintiff."[37]   If the facts as plead allow the Court to conclude that plaintiff's claims for relief

---

[31] 28 U.S.C. § 1406(a)(1996).
[32] *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed.Appx. 612, 615 (5th Cir. 2007).
[33] *Lighthouse MGA, L.L.C. v. First Premium Ins. Grp., Inc.*, 448 Fed.Appx. 512, 514 (5th Cir. 2011)(quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)).
[34] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[35] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[37] *Taha v. William Marsh Rice Univ.*, Civ. Action No. H-11-2060, 2012 WL 1576099, *2 (S.D.Tex. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)).

are "plausible," the motion must be denied.[38]  To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]

## III.    ANALYSIS

A.    Is Venue Proper in the Middle District of Louisiana?

Dr. Peavy and Imperial Health challenge whether venue is appropriate in this Court.  Pursuant to 28 U.S.C. § 1391(b), venue is proper in:

(1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Additionally, for venue purposes, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with the request to the civil action in question."[41]

Dr. Peavy and Imperial Health argue that because they only practice or conduct business in Lake Charles, Louisiana, and do not practice or conduct any business in the

---

[38] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[39] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[40] *Id.*
[41] 28 U.S.C. § 1391(c)(2)(2011).

Middle District of Louisiana, venue in the Middle District is improper as to Plaintiffs' claims against them. This, however, is not the test for determining whether venue is proper.

Plaintiffs have alleged that both OLOL Hospital and OLOL Foundation are non-profit corporations domiciled in Baton Rouge and doing business in Louisiana.[42] Plaintiffs have also alleged that OLOL Hospital and OLOL Foundation own, lease, and/or operate OLOL Hospital and Emergency Room, located in Baton Rouge.[43] Considering these alleged contacts in the Middle District of Louisiana, the Court finds that OLOL Hospital and OLOL Foundation would be subject to the Court's personal jurisdiction. Plaintiffs have also alleged that Dr. Peavy is resident of Lake Charles, Louisiana, and that Imperial Health is a Louisiana limited liability partnership domiciled in Lake Charles, Louisiana.[44] Defendants have not contested these allegations. Therefore, the Court finds that because all of the Defendants in this case are residents of the State of Louisiana, and OLOL Hospital and OLOL Foundation are residents in the Middle District of Louisiana, then the Middle District of Louisiana is a Court of proper venue per 28 U.S.C. § 1391(b)(1). The *Motion to Dismiss* filed by Dr. Peavy and Imperial Health shall be denied on this ground.

B. Standing: Labouliere's Associational Discrimination Claims[45]

In this case, the Defendants' *Motions* raise the issue of whether Labouliere has statutory standing to assert a claim under the RA, the ACA, and the LCHR.[46] Statutory

---

[42] Doc. 1, pp. 4-5, ¶¶8-9; Doc. 3, pp. 4-5, ¶¶8-9; Doc. 16, pp. 4-5, ¶¶8-9.
[43] Doc. 1, pp. 4-5, ¶¶8-9; Doc. 3, pp. 4-5, ¶¶8-9; Doc. 16, pp. 4-5, ¶¶8-9.
[44] Doc. 1, p. 3, ¶6; Doc. 3, p. 3, ¶6; Doc. 16, pp. 3-4, ¶¶6-7.
[45] In this case, the Defendants failed to identify in their respective motions and memoranda the legal standard they were relying on to support dismissal of Plaintiffs' claims (*i.e.*, Rule 12(b)(1) or Rule 12(b)(6)).
[46] In federal courts, Article III "standing is perhaps the most important of the jurisdictional doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995)(internal quotation marks and alterations omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

standing involves the merits-based question of whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" under a particular statute; that is, whether the plaintiff has a cause of action under the applicable statute.[47] Such an inquiry "does not implicate subject-matter jurisdiction, *i.e*, the court's statutory or constitutional power to adjudicate the case."[48] Accordingly, the Court shall address the Defendants' *Motions* under Rule 12(b)(6), rather than Rule 12(b)(1).[49]

1.    Labouliere's RA and ACA Claims

At issue in this case is how broadly the Court should interpret the associational standing provisions under the RA and the ACA. Because the parties are in agreement that Labouliere's RA and ACA claims are analyzed in the same way,[50] the Court's analysis of Labouliere's RA claim will also apply to her ACA claim.[51]

Labouliere alleges individual RA and ACA claims for an injury she allegedly sustained through her association with Smith. "Under both the RA and the ADA, non-disabled individuals have standing to bring claims when they are injured because of their

---

traceable to the challenged action of the defendant; and [(]3) it is likely, as opposed to merely speculative, that the injury will redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

[47] *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-Civ-A-1651, 2016 WL 4944370, *4 (N.D. Tex. Sept. 16, 2016)(quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387-88 (2014)).

[48] *Id.* (citing *Lexmark Int'l, Inc.*, 134 S.Ct. at 1387 n.4 (citation and internal quotation marks omitted)).

[49] "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Hughes Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 808 n.2 (5th Cir. 2011).

[50] "Section 1557 of the [ACA] incorporated the RA's definition of disability and provides the same protections for people with disabilities as the RA." Doc. 21-1, p. 7 (citing *Bernius v. Oschner Med. Ctr.*, No. 2:16-Civ-A-14730, Doc. 33, pp. 8-9 (E.D. La. December 15, 2016)); Doc. 29, p. 6 n.7.

[51] Section 1557 of the ACA provides: "an individual shall not, on the ground prohibited under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. § 6101 *et seq.*), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . ." 42 U.S.C. § 18116(a)(2010).

association with a disabled person."[52]  The Fifth Circuit has yet to address what standard applies for determining whether a person has a sufficient "association with a disabled person" to satisfy the standing requirement of the RA.  In light of this void, the parties have turned to the Eleventh and Second Circuits, which have addressed this very issue, for support of their opposing positions.

On the one hand, the Plaintiffs argue that the Second Circuit decision, *Loeffler v. Staten Island Univ. Hosp.*, which supports a broader interpretation of the RA's standing provision, should control.[53]  In sharp contrast, the Defendants argue that the more narrow interpretation set forth by the Eleventh Circuit in *McCullum v. Orlando Reg'l Healthcare System* should apply.[54]  Defendants have also directed the Court to *Bernius v. Oschner*, a recent decision in which Judge Barbier of the Eastern District of Louisiana employed the narrow definition of associational standing from *McCullum* and the *Loeffler* dissent.[55]

Under the clear text of the ADA, "a non-disabled individual has standing to bring suit under the ADA only if she was personally discriminated against or denied some benefit because of her association with a disabled person."[56]  Unlike the ADA's associational standing provision, the relevant section of the RA provision granting standing to non-disabled persons, 29 U.S.C. § 794a(a)(2), is less clear.  The RA's associational standing provision provides as follows:  "[t]he remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964 … shall be available to any person aggrieved by any act or failure to act by any" entity subject to the RA.[57]  This statutory

---

[52] *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1142 (11th Cir. 2014)(citations omitted); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279-80 (2nd Cir. 2009)).
[53] *Loeffler*, 582 F.3d 268.
[54] *McCullum*, 768 F.3d 1135.
[55] *Bernius*, No. 2:16-Civ-A-14730, Doc. 33.
[56] *McCullum*, 768 F.3d at 1142 (citing 42 U.S.C. § 12182(b)(1)(E)(1990)).
[57] 29 U.S.C. § 794a(a)(2)(2009).

provision does not stand alone.  Rather, it is part of a larger statutory context that includes 29 U.S.C. § 794(a)—the RA's statute prohibiting discriminatory treatment.  Section 794(a) provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program" covered by the RA.[58]  In this case, the parties disagree about whether 29 U.S.C. § 794(a) limits the broader language of 29 U.S.C. § 794a(a)(2).

The Plaintiffs encourage the Court to adopt the reasoning of the Second Circuit in *Loeffler* because they contend it is consistent with Supreme Court precedent and the plain language of the RA and ADA.  The *Loeffler* court construed the standing provision of 29 U.S.C. § 794a(a)(2) as being distinct from the provision prohibiting discriminatory conduct, 29 U.S.C. § 794(a).  The court explained that it would construe the standing provision of the RA as broadly as possible under the Constitution, irrespective of 29 U.S.C. § 794(a).  The *Loeffler* court held that "the type of injury a 'person aggrieved' suffers need not be 'exclusion from the participation in, … denial of the benefits of, or … subjection to discrimination under any program or activity receiving Federal financial assistance.'"[59]  Instead, a non-disabled plaintiff need only establish "an injury causally related to, but separate and distinct from, a disabled person's injury under the [RA]."[60]

Additionally, the Plaintiffs argue that the Supreme Court has repeatedly held that the word "any" should be given an expansive meaning.  Therefore, Plaintiffs contend that

---

[58] 29 U.S.C. § 794(a)(2009).
[59] *Loeffler*, 582 F.3d at 280.
[60] Hence, the *Loeffler* court concluded that it would construe the standing provision of the RA as broadly as possible under the Constitution, irrespective of 29 U.S.C. § 794(a).

the phrase "any person aggrieved" should be given its broadest meaning and encompass "any person," whether they are disabled or not.

The Court has reviewed the decisions in *McCullum* and *Loeffler*.  Ultimately, this Court shares the same concerns as those expressed by Judge Barbier in *Bernius* and Chief Judge Jacobs in his *Loeffler* dissent: that "[t]he [*Loeffler*] majority's wide interpretation of 'any person aggrieved' has no evident limiting principle . . . ."[61]   Hence, this Court also adopts the holding of *McCullum*.

In expressly rejecting the holding in *Loeffler*, the *McCullum* court held that 29 U.S.C. § 794(a) limited the scope of 29 U.S.C. § 794a(a)(2).  In its assessment of the scope of 29 U.S.C. § 794a(a)(2), the court acknowledged that the word "any" is a "powerful and broad word."[62]   Nevertheless, relying on the language of the Supreme Court, the *McCullum* court explained that the "broad language is not limitless" and "a liberal construction nonetheless can find limits in a text's language, context, history, and purposes."[63]   Ultimately, the *McCullum* court concluded that "the threshold for associational standing under both the RA and the ADA is the same: non-disabled persons have standing to seek relief under either statute only if they allege that they were personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person."[64]

The *McCullum* court further reasoned that it could not construe the RA standing provision more broadly than the ADA's standing provision by covering injuries beyond

---

[61] *Bernius*, No. 2:16-Civ-A-14730, Doc. 33, p. 12; *Loeffler*, 582 F.3d at 287.
[62] *McCullum*, 768 F.3d at 1142 (quoting *United States v. Fleet*, 498 F.3d 1225, 1229 (11th Cir. 2007)).
[63] *Id.* at 1143 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147(2007)).
[64] *Id.*

exclusion, denial of benefits, or discrimination that a plaintiff personally suffers.[65]   The court explained that to allow such a broad construction would directly contradict the ADA's directive that it must not be construed to apply a lesser standard than the standards applied under the RA.[66]   As in *Bernius*, this Court also declines to apply these lesser standards.

Applying the *McCullum* standard, the Court finds that Labouliere has failed to allege that she was personally excluded, denied benefits, or discriminated against because of her association with Smith.   Labouliere claims that because she was required to interpret for her mother, she was personally denied "goods, services, facilities, privileges, advantages, accommodations, or other opportunities."[67]   As the Defendants correctly point out, however, they were not required to provide any "goods, services, facilities, privileges, advantages, accommodations, or other opportunities" to Labouliere personally.   The Court further finds no merit in Labouliere's attempt to distinguish her "injury" from the plaintiff's injury in *Bernius* in order to show that that she has standing to assert her claims, because Labouliere's argument fails to take into account the applicable standard for associational standing under *McCullum*.   Accordingly, the Court finds that Labouliere lacks standing to assert a private right of action under the RA and the ACA, and these claims shall be dismissed.

---

[65] *Id.*
[66] *Id.*
[67] Doc. 29, pp. 6 and 8.

2.    Labouliere's LCHR Claims

Defendants also seek the dismissal of Labouliere's LCHR claims because she lacks associational standing to assert such claims.  Labouliere does not address the Defendants' argument.

La. R.S. 51:2247 provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation … as defined in this Chapter, on the grounds of … disability."[68]  The LCHR allows for "[a]ny person deeming himself injured by any alleged violation of [La. R.S. 51:2262 *et seq.*]" to bring a civil cause of action.[69]  Courts interpreting the LCHR have consistently found that it does not "provide for recovery for loss of consortium or any other derivative damages sustained by persons other than the direct victim of the alleged discrimination."[70]  This Court agrees with the conclusion reached by these courts.  Furthermore, Labouliere has failed to cite to any case that extends the right of recovery to persons other than the victim of the alleged discrimination.  Accordingly, the Court finds that Labouliere lacks standing to assert her individual claims under the LCHR and they shall be dismissed.

C.    Are Smith's Claims Premature Under the LMMA?

Defendants also seek dismissal of Smith's federal and state law claims as premature.  According to the Defendants, "there can be no question that some, if not all,

---

[68] LA. REV. STAT. § 51:2247 (1993).
[69] LA. REV. STAT. § 51:2264 (1988).
[70] *Salard v. Lowe's Home Centers, Inc.*, 904 F. Supp. 569, 572 (W.D. La. 1995); *Dowlearn v. Baker Oil Tools, Inc.*, 1997 WL 767721, *5 (E.D. La. Dec. 10, 1997)(federal courts "also recognize that the Louisiana anti-discrimination statutes [*i.e.*, La. R.S. 23:1006 and La. R.S. 51:2321] do not provide causes of action for individuals other than the victim of the alleged discrimination"); *See also, Imbornone v. Treasure Chest Casino*, No. 04-Civ-A-2150, 2006 WL 1235979, *4 n.7 (E.D. La. May 3, 20016)(citing *Salard*, 904 F.Supp at 572)).

of plaintiffs' claims on behalf of" Smith sound in medical malpractice.[71]   Therefore,

Defendants contend that the claims fall within the purview of the Louisiana Medical

Malpractice Act ("LMMA"), which requires a plaintiff to submit her medical malpractice

claims to a medical review panel for review prior to filing suit.[72]   To buttress their position,

the Defendants have submitted a copy of Plaintiffs' request for a medical review panel,

which they contend alleges "nearly identical claims" as those pled in the *Complaints*

before this Court.[73]   The Plaintiffs do not dispute Defendants' characterization of their

request for a medical review panel.

Under the LMMA, "[a]ll medical malpractice claims against health care providers

… other than claims validly agreed for submission to a lawfully binding arbitration

procedure, shall be reviewed by a medical review panel."[74]   The LMMA provides that "[n]o

action against a health care provider …, or his insured, may be commenced in any court

before the claimant's proposed complaint has been presented to a medical review

panel."[75]

In conducting its analysis on prematurity, the Court will initially focus on Smith's

federal law claims, and then address her LCHR claims.

1.     Smith's Federal Claims

As for the RA and ACA claims, the point of contention between the parties is

whether Smith's federal claims are "so intertwined with any state law claims for medical

malpractice, or violation of the LCHR, that they cannot be reasonably separated" so as to

---

[71] Doc. 21-1, p. 8.
[72] Doc. 21-1, pp. 8-9.
[73] Doc. 21-1, p. 9; Doc. 21-2 (The Medical Review Panel Request was submitted by Labouliere on behalf of her mother on November 23, 2016.).
[74] LA. REV. STAT. § 40:1231.8(A)(1)(a)(2017).
[75] LA. REV. STAT. § 40:1231.8(A)(1)(a)(2017).

warrant their dismissal.[76]  The Defendants contend that the federal claims and the state malpractice claims cannot be reasonably separated so that they may be litigated in their respective courts.  Therefore, allowing the federal claims to be litigated in federal court while the state law claims are considered by a medical review panel "could potentially result in inconsistent judgments" against the Defendants.[77]  The Plaintiffs disagree, arguing that Smith's federal causes of action need not comply with state law administrative exhaustion requirements.  Their argument relies upon principles of federal conflict and preemption.  After considering the parties' differing opinions, the Court finds merit in the Plaintiffs' position.

As the Plaintiffs correctly note, the Fifth Circuit has held that "private individual suits to enforce Section 504 rights can be brought without resort to administrative remedies."[78]  The Fifth Circuit has also held that "[a]lthough a plaintiff must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim against a federal *agency*, it need not do so before suing a federal *grantee*."[79]  The Plaintiffs' allegations that each of the Defendants are recipients of financial assistance has not been disputed.  Therefore, the Court finds that exhaustion of administrative remedies is not required.

The Defendants have also offered no authority for their argument that when federal and state law claims are so intertwined, the federal claims should be dismissed.  The lone case cited by Defendants, *Banks v. Wright*, only involved state law claims that are clearly

---

[76] Doc. 21-1, pp. 9-10; Doc. 29, pp. 12-14.
[77] Doc. 21-1, p. 10.
[78] *Camenisch v. Univ. of Tex.*, 616 F.2d 127, 135-36 (5th Cir. 1990), *vacated on other grounds* 451 U.S. 390 (1981).
[79] *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015)(emphasis original).

encompassed by the LMMA.[80]  Therefore, the Court finds no merit in the Defendants'

argument.

Overall, the Court finds that Judge Barbier's reasoning in *Bernius* resolves the

parties' disagreement:

> Ultimately, the Supremacy Clause of the United States Constitution controls
> the disposition of this issue.  *See* U.S. Const. art. VI, cl. 2.  Plaintiffs have
> brought a federal claim pursuant to 28 U.S.C. § 1331.  Congress did not
> create an administrative exhaustion requirement when it passed the
> Rehabilitation Act, and the Fifth Circuit has held that administrative
> exhaustion is not required in the pursuit of a Rehabilitation Act claim when
> the defendant is a federal grantee.  *See Taylor*, 798 F.3d at 284.  Congress'
> purpose in passing the Rehabilitation Act was to "empower individuals with
> disabilities to maximize employment, economic self-sufficiency,
> independence, and inclusion and integration into society." *See* 29 U.S.C. §
> 701(b)(1); *see also Frame v. City of Arlington*, 657 F.3d 215, 230-31 (5th
> Cir. 2011)(discussing the purpose of the Rehabilitation Act and ADA).  The
> Rehabilitation Act attempts to achieve this goal by providing a private cause
> of action to obtain relief in federal court.  *See Prewitt v. U.S. Postal Service*,
> 662 F.2d 292 (5th Cir. 1981)("*Prewitt I*")(discussing the history and purpose
> of the Rehabilitation Act).  Requiring a Rehabilitation Act plaintiff to exhaust
> state administrative procedures would stand in as an obstacle to the
> congressional intent of the Rehabilitation Act.  *See Smith v. State of Ind.*,
> 904 F.Supp. 877, 880 (N.D. Ind. 1995)(finding, in the ADA context, that
> "[t]he defendant may not use the Indiana Medical Malpractice Act's
> requirement of presentation of claims to a medical review panel as a means
> to trump the plaintiff's claim under federal law").[81]

Relying on the foregoing analysis from *Bernius*, this Court finds that the

Defendants' *Motions to Dismiss* Smith's RA and ACA claims as premature shall be

denied. [82]

---

[80] *Banks v. Wright*, 721 So. 2d 1063 (La. Ct.App. 1st Cir. 1998), 97-1869 (involving medical battery claims
for alleged failure to obtain informed consent).

[81] *Bernius*, No. 2:16-Civ-A-14730, Doc. 33, pp. 18-19.

[82] Because the Court has already dismissed Labouliere's federal and state law claims in this *Ruling* for lack
of standing, the *Motions* seeking dismissal as to her claims on prematurity grounds are denied as moot.
However, the Court's conclusion that a plaintiff asserting claims under the RA and ACA in federal court
need not wait until a medical review panel completes its review of a complaint before filing suit on his/her
federal claims applies with equal force to Labouliere.

2.    Smith's LCHR Claims

In response to the Defendants' prematurity argument regarding Smith's LCHR claims, the Plaintiffs argue that Smith's LCHR claims should not be dismissed if she has alleged a claim of intentional discrimination.  Under Louisiana law, malpractice is defined as "any unintentional tort or any breach of a contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient."[83]  Importantly, Plaintiffs are not arguing that they have only alleged intentional torts in their *Complaints*.  In fact, the Plaintiffs' request for a review by a medical review panel for Smith's medical malpractice claims indicates quite the opposite.  Therefore, assuming, without finding, that Smith has alleged some claims of intentional discrimination, the Court finds that she has also alleged claims for unintentional torts that sound in medical malpractice under Louisiana law.

Unlike Smith's federal RA and ACA claims, her LCHR claims are subject to the same procedural requirements as other Louisiana state law claims that have substantial overlap with the LMMA.  As previously discussed, the Plaintiffs do not contest the Defendants' assertion that the allegations in their *Complaints* filed in this case are "nearly identical" to those in their request for a medical review panel.   Therefore, pursuant to LMMA, the Plaintiffs' *Complaints* must be presented to a medical review panel prior to the commencement of an action in any court.[84]   Accordingly, Smith's LCHR claims shall be dismissed as premature.

---

[83] LA. REV. STAT. § 40:1231.1(A)(13)(2015).
[84] La. R.S. 40:1231.8(B)(1)(a)(i) provides that "[n]o action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel . . . ." (2017).

18

D. Is a Stay Warranted in This Case Pending the Outcome of the Medical Review Panel?

In the alternative, the Defendants argue that the Court should stay this case while the state law claims are considered by the medical review panel. Defendants contend that granting a stay would be in the interest of judicial economy. They specifically argue that discovery in the proceeding before the medical review panel will be duplicative of the discovery in the pending action because the claims are "inextricably intertwined," and that without a stay they are exposed to potential conflicting or multiple judgments.[85] In response, Plaintiffs argue that a stay will prejudice them by hindering their ability to conduct discovery in accordance with the federal rules, cause a delay in the trial date, and leave the parties without Court involvement to resolve any disputes that might arise.[86] Plaintiffs contend that the medical review panel must have its decision issued by February 10, 2018; therefore, any concerns Defendants have can be factored into the drafting of the Rule 26(f) Status Report.[87]

"A court's authority includes the 'general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.'"[88] However, the court's discretion is not limitless.[89] When deciding whether to grant a stay, the courts "must weigh competing interests and maintain an even balance."[90] The Court has carefully considered (1) the potential for hardship and inequity imposed on the parties by proceeding with the action, (2) whether prejudice will result if a stay is imposed, and (3)

---

[85] Doc. 36, p. 4; Doc. 21-1, p. 11.
[86] Doc. 29, p. 17.
[87] Doc. 29, pp. 16-17.
[88] *Clark v. Chet Morrison, Inc.*, No. 08-Civ-A-4253, 2009 WL 425625, *1 (E.D. La. Feb. 18, 2009)(quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982); *Bugay v. McCain*, 2008 WL 2782869 at *1 (E.D. La. 2008)).
[89] *Wedgeworth v. Fibreboard Corp.*, 706 F. 2d 541, 545 (5th Cir. 1983).
[90] *Id.* (citing *Landis v. N. American Co.*, 57 S.Ct. 163, 165-66 (1936)).

the interests of judicial economy.[91]  Although resolution of Smith's federal RA and ACA claims does not necessarily require resolution of her state law claims, her federal claims are factually connected to her state law claims.  The Court agrees with Defendants' argument that by granting a stay in this case, duplicative discovery would be avoided. And, as Plaintiffs have admitted, the medical review panel's decision must be rendered by February 10, 2018—less than five months away.  Hence, the Court finds that Plaintiffs will not be prejudiced by granting a stay under these particular circumstances. Accordingly, the Court finds that it is in the interest of judicial economy to stay the instant litigation pending the completion of the pending medical review panel proceeding among these same parties.

## IV.    CONCLUSION

For the foregoing reasons, the *Motion to Dismiss and Alternative Motion to Stay* filed by Our Lady of the Lake Hospital, Inc. and Our Lady of the Lake Foundation, and the *Motion to Dismiss and Alternative Motion to Stay* filed by Dr. Todd A. Peavy and Imperial Health, LLP are hereby GRANTED IN PART and DENIED IN PART.[92]

The *Motion* of Dr. Todd A. Peavy and Imperial Health, LLP is denied as to venue.

The Defendants' *Motions* are granted as to the claims brought by Plaintiff Katrina Rivers Labouliere in her individual capacity under the Rehabilitation Act, the Patient Protection and Affordable Care Act, and the Louisiana Commission of Human Rights. Plaintiff Katrina Rivers Labouliere's claims brought under the Rehabilitation Act, the

---

[91] *Falgoust v. Microsoft Corp.*, No. 0-Civ-A-0779, 2000 WL 462919, *2 (E.D. La. Apr. 19, 2000)(citations omitted).
[92] Doc. 21; and Doc. 23.

Patient Protection and Affordable Care Act, and the Louisiana Commission on Human Rights are hereby dismissed with prejudice.

The Defendants' *Motions* are denied as to Katherine Smith's Rehabilitation Act claim and Patient Protection and Affordable Care Act claim.

The Defendants' *Motions* are granted as to Katherine Smith's Louisiana Commission on Human Rights claims.  Katherine Smith's claims brought under the Louisiana Commission on Human Rights are hereby dismissed without prejudice.

The Defendants' *Motions* are granted as to their request for a stay.  The Clerk of Court is hereby ordered to administratively close this action, *Labouliere v. Our Lady of the Lake Foundation et al.* (16-cv-785), in his records.[93]  Once the medical review panel issues its decision, either party may move the Court to lift the stay in the instant matter.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana, on September 29, 2017.

        **JUDGE JAMES J. BRADY**
        **UNITED STATES DISTRICT COURT**
        **MIDDLE DISTRICT OF LOUISIANA**

---

[93] The Court's entry of a stay in 3:16-cv-00785, shall have no effect on 3:17-cv-00530, 3:17-cv-00509, and 3:17-cv-00393.