UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KATRINA RIVERS LABOULIERE,            CIVIL ACTION NO: 16-785
*individually and on behalf of the Estate of*
KATHERINE SMITH

versus            JUDGE SHELLY D. DICK

OUR LADY OF THE LAKE HOSPITAL,            MAGISTRATE WILDER-DOOMES
INC.

## RULING

Before the Court is a *Motion in Limine*[1] by the Defendant, Our Lady of the Lake Hospital, Inc. ("OLOL"), to exclude Plaintiff's expert witness Jody N. Prysock, M.S., C.I. The *Motion* is opposed by the Plaintiff, Katrina Rivers Labouliere, who is proceeding on behalf of her deceased mother, Katherine Smith.[2] For the reasons which follow, the *Motion*[3] shall be GRANTED in part and DENIED in part.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Katherine Smith, who was legally deaf, received in-patient care at OLOL. Plaintiff alleges that the hospital "failed to provide Ms. Smith with the necessary interpretation services, and thereby failed to provide her with communication that was equal to that provided to hearing persons in a medical setting."[4]

Plaintiff brings claims of disability discrimination under the under Section 504 of the Rehabilitation Act of 1973 ("RA")[5] and Section 1557 of the Patient

---

[1] Rec. Doc. 94.
[2] Rec. Doc. 107.
[3] Rec. Doc. 94.
[4] Rec. Doc. 74, ¶ 1.
[5] 29 U.S.C. § 794; Rec. Doc. 74, ¶ 4.

59639

Protection and Affordable Care Act ("ACA")[6] and a companion state law claim under La. R.S. § 51:2231.[7]

Plaintiffs retained and identified Jody N. Prysock, M.S., C.I. ("Prysock") as an expert witness. Defendants move to exclude Prysock under *Daubert*.[8] Defendant maintains that Prysock is not qualified to render the opinions sought to be offered and that her opinions are neither reliable nor relevant.

Plaintiff seeks to tender Prysock to give opinion testimony in the following fields:

> "Deaf communication; Deaf culture; American Sign Language; Interpretation between English and American Sign Language; VRI; Policies, practices, and procedures for accommodating deaf individuals and communicating with deaf individuals in medical settings."[9]

In her Report,[10] Prysock explains that the "Objective" of her engagement and proposed opinion is to:

1. "Provide a general framework of models for Deafness. . ."
2. "Evaluate and determine any deficiencies in policies related to the Deaf and hard of hearing at Our Lady of the Lake Hospital"
3. "ascertain OLOL's policy is aligned with national standards as they pertain to the provision of effective communication"
4. "assess if these practices are systematically implemented and sustained"
5. "address if current policies and procedures to reflect in the best practices and meet standards as set forth by The Joint Commission and the centers from Medicaid and Medicare"[11]

---

[6] 42 USC § 18116; Rec. Doc. 74, ¶ 4.
[7] LA. REV. STAT. art. 51:2231.
[8] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).
[9] Plaintiff's Preliminary Expert Witness Disclosures. Rec Doc. 94-2.
[10] Rec. Doc. 94-3.
[11] *See Id.*
59639

Prysock formulated her opinions after conducting a site inspection of the hospital and interviewing OLOL administrators. By her Report[12] she observes and opines that:

- "responses to my questions vague and did not reflect specific steps to be taken when caring for deaf or hard of hearing patients or families"
- the following communication methods "would not provide effective communication for many or most deaf or hard of hearing patients as English is not their first language":
  - Communication cards
  - Video Remote Interpretation ("VRI")
  - White board and pen and paper
- The response by OLOL administrators interviewed that Communication in E/R "whatever works best" is inadequate and suggests administrators are unfamiliar with the auxiliary aids and devices that should be made available to a deaf and hard of hearing patients.

Plaintiff seeks to have Prysock offer opinions regarding OLOL's policies and procedures for communicating with Deaf and hard of hearing patients. As part of her analysis, Prysock redlined and critiqued OLOL's policies and procedures for communicating with deaf patients. She ultimately opines that "[h]iring qualified interpreters is the only way hospitals can implement safe measures to prevent medical errors and adverse events"[13] Regarding the use of qualified interpreters, Prysock opines that:

- Americans with Disabilities Act and Title VI (sic) "requires that hospitals provide interpreting services to Limited English Proficient (LEP) patients (which may include Deaf patients) and those with disabilities that affect their ability to communicate."

---

[12] Rec. Doc. 94-3.
[13] *Id.*
59639

- "The Centers for Medicare and Medicaid (CMS) has (sic) initiated a requirement that all its beneficiaries have access to interpreters. Hiring qualified interpreters is the only way hospitals can implement safe measures to prevent medical errors and adverse events.
- The use of qualified Sign language interpreters, which may include Certified Deaf Interpreters, are imperative in medical and healthcare settings".[14]

## II. LAW AND ANALYSIS

Federal Rule of Evidence 702 and *Daubert*[15] and its progeny are well known to the Court, and as demonstrated by the briefing, to the counsel for the parties as well. Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[16]

### A. Qualification by knowledge, skill, experience, training, or education

Plaintiff argues that "Ms. Prysock is qualified to serve as an expert regarding communicating with Deaf individuals in a medical setting" because

> Ms. Prysock has been certified by the National Registry of Interpreters for the Deaf for nearly twenty years. She has worked as part of the Deaf and Hard of Hearing program at two hospitals in New York. Ms. Prysock has served as an adjunct professor at the CUNY School of Professional studies teaching a course regarding cultural aspects of disability.6 She is a founding member of the Healthcare Communication Access Committee. Ms. Prysock was on the Board of Directors for the National Council on Interpreting in

---
[14] Rec. Doc. 94-3.
[15] *Daubert,* 509 U.S. 579.
[16] FED. R. EVID. 702.
59639

> Healthcare. She served as a Chair on the Healthcare Access Expert Committee for the National Association of the Deaf.9 Ms. Prysock co-authored a guide for effective communication in healthcare. Finally, Ms. Prysock has worked as a trainer/consultant on interpreting in medical settings and caring for Deaf and hard of hearing patients.[17]

By the plain language of FRE 702 an expert may be qualified by "scientific, technical, or other specialized knowledge" ***if*** the proposed opinion testimony will "help the trier of fact to understand the evidence or to determine a fact in issue" ***and*** "the testimony is based on sufficient facts or data" ***and*** "the testimony is the product of reliable principles and methods" ***and*** "the expert has reliably applied the principles and methods to the facts of the case".[18]

Many Courts analyze the "knowledge, skill, experience, training, or education" requirement of Rule 702 as a threshold inquiry.[19] This Court will evaluate the "knowledge, skill, experience, training, or education" requirement as a component of the other four requirements for admissibility; namely, will the opinion testimony assist the trier of fact, is it derived from or supported by sufficient facts or data, were the principles and methods used reliable and were they reliably applied. In short, the relevance and reliability of the proposed opinions must be evaluated in conjunction with the professed qualifications of the proffered expert.

---

[17] Rec. Doc. 107 p. 5 (footnotes, citations, and emphasis omitted).
[18] FED. R. EVID. 702.
[19] "The threshold inquiry is whether the expert possesses the requisite qualifications to render opinion on a particular subject matter." *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 272 (E.D. La. 2014), citing *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 799 (E.D. La. 2011); *see also Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."). Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant. *See United States v. Valencia,* 600 F.3d 389, 424 (5th Cir. 2010).

59639

B. Relevance Inquiry: Assistance to the Trier of Fact

In this case, the question considering this factor the question is: Is Prysock qualified to serve as an expert regarding communicating with deaf individuals in a medical setting and will her opinions assist the jury? Among other things,[20] Plaintiff points principally to Prysock's experience as the Manager of the Deaf and Hard of Hearing Program, and the Director of Language, Cultural and Disability Services, at NYUMC.[21]

FRE Rule 702's requirement that evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance.[22] Defendant argues that the ACA and the RA require evidence of actual knowledge and therefore opinion testimony that goes to best practices is tantamount to a constructive knowledge standard and therefore irrelevant.[23] The Plaintiff argues in opposition that the Fifth Circuit has not adopted a specific standard of intent and instead focused on the "widely accepted principal that intent requires that the defendant at least have actual notice of a violation."[24] The

---

[20] Plaintiff submits that "Ms. Prysock has been certified by the National Registry of Interpreters for the Deaf for nearly twenty years. She has worked as part of the Deaf and Hard of Hearing program at two hospitals in New York. Ms. Prysock has served as an adjunct professor at the CUNY School of Professional studies teaching a course regarding cultural aspects of disability. She is a founding member of the Healthcare Communication Access Committee. Ms. Prysock was on the Board of Directors for the National Council on Interpreting in Healthcare. She served as a Chair on the Healthcare Access Expert Committee for the National Association of the Deaf. Ms. Prysock co-authored a guide for effective communication in healthcare. Finally, Ms. Prysock has worked as a trainer/consultant on interpreting in medical settings and caring for Deaf and hard of hearing patients." Rec. Doc. 107 p. 5 (citations omitted).
[21] *Id.* p. 6.
[22] "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–460 (5th Cir. 2002).
[23] Rec. Doc. 94-1 p. 13-14.
[24] "Though intent is a necessary element of a damages claim, we have previously declined to adopt a specific standard of intent." See, *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir. 2015) (per curiam) (stating that "[w]e did not define what we meant by intent in Delano–
59639

applicable legal standard is a matter for the jury instructions or a Rule 50 Motion. Whether OLOL's deaf patient communication practices are effective is a factual question and therefore the relevance factor is satisfied. Defendant concedes that "in order to avoid discrimination [the] accommodation of a person's disability need not be ideal; instead, it need only be reasonable and effective."[25] Additionally, the Court finds that deaf communication practices are outside the general understanding of the average hearing juror; hence, testimony regarding deaf communication in a medical setting will assist the trier of fact. The Court also finds that by virtue of her experience,[26] Prysock is qualified to provide testimony regarding effective deaf communication in a medical setting.

Defendant further argues that testimony "regarding deaf culture and nuances/norms within the deaf community are likewise irrelevant because they will not assist the trier of fact."[27] The Court finds that deaf culture is likewise outside of the general knowledge and understanding of the average hearing juror and an understanding of the cultural norms and particularities within the deaf community will be of assistance to the jury in its factual inquiries.

The Court finds however, that Prysock is not qualified by knowledge, skill, experience, training, or education to opine as to legal or regulatory requirements of the Americans with Disabilities Act or the Centers for Medicare and Medicaid

---

Pyle"). More recently, the Circuit again did not reach the issue of what proof of "intent" requires. "We need not delineate the precise contours [of intent] in this case." *Miraglia v. Board of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574-5 (5th Cir. 2018).

[25] Rec. Doc. 94-1, *citing, Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016) (citation omitted)., citing *Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012).
[26] *See* Rec. Doc. 107 p. 5 (footnotes, citations, and emphasis omitted).
[27] Rec. Doc. 94-1 p. 14.

59639

(CMS). Any opinion testimony by Prysock regarding the legal and or regulatory requirements of the RA, ACA, ADA and CMS[28] regulations shall be excluded at trial.

### C. Reliability

#### 1. *Sufficiency of Facts or Data Relied Upon*

Prysock formulated her opinions after conducting a site inspection of the hospital, interviewing OLOL administrators and evaluating OLOL's written policies and procedure pertaining to communicating with deaf patents.[29] Defendant points out that "she has not read any depositions in this case, never interviewed or even met the Ms. Smith, and has not reviewed any medical records."[30] The Court finds the sufficiency of the facts and data relied upon by Prysock to be less than circumspect. However, the Court is persuaded that this is "soft science" and as argued by Plaintiff Prysock has "real world experience . . . developing and implementing policies and procedures to ensure that hospital staff is providing Deaf patients with equal access to communication."[31] The Fifth Circuit has recognized the "inherent methodological limitations in all social-science research."[32] The Court finds that the facts and data relied upon together with Prysock's experience are sufficiently reliable.

---

[28] Specific reference is made to Prysock's report which opines that: the Americans with Disabilities Act and Title VI [sic] "requires that hospitals provide interpreting services to Limited English Proficient (LEP) patients (which may include Deaf patients) and those with disabilities that affect their ability to communicate", and "The Centers for Medicare and Medicaid (CMS) has [sic] initiated a requirement that all its beneficiaries have access to interpreters." Rec. Doc. 94-3 p. 11.
[29] Rec. Doc. 94-3, 107 and 107-2.
[30] Rec. Doc. 94-1, *citing* Exhibit C, pp. 84:20-85:9; p. 113:2-114:13.
[31] Rec. Doc. 107.
[32] *U.S. v. Simmons,* 470 F.3d 1115, 1123 (5th Cir. 2006), citing *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997).
59639

## 2. *The Reliability of the Methodology Used*

Defendant argues that Prysock "employed no methodology other than her own beliefs."[33] Plaintiff counters that her "methodology is reliable because she bases her testimony on her professional and real-world experiences."[34] What was done in this case is: Prysock interviewed OLOL staff and administrators, made observations at a site visit, and evaluated OLOL written policies and procedures regarding communication with deaf patients; she then compared and contrasted that data with what she considers to be best practices based on her professional experience and knowledge. The Court finds that Prysock is qualified by skill, training and experience to opine on best practices for communicating with deaf persons in medical settings, and that the methodology used, while not scientific or technical, is nonetheless reliable under facts of this case.

---

[33] Rec. Doc. 94-1 p. 19.
[34] Rec. Doc. 107 p. 10.
59639

### III. CONCLUSION

For the foregoing reasons, the *Motion in Limine*[35] to exclude testimony of Jody N. Prysock is GRANTED in part and DENIED in part. The testimony of Jody N. Prysock shall be limited and she shall not be permitted to provide opinion testimony on matters of law, specifically, the legal requirements under Section 504 of the Rehabilitation Act of 1973 ("RA"), Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), and analogous provisions of the Americans with Disabilities Act.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana the 20th day of March, 2020.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[35] Rec. Doc. 94.